STATE of Utah, Plaintiff and Appellee,

v.

Venus Ann **SHERARD**, Defendand and Appellant.

No. 890383–CA.

Court of Appeals of Utah.

Sept. 10, 1991.

James C. Bradshaw, Joan C. Watt and Elizabeth Holbrook (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Christine F. Soltis, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Venus Ann Sherard appeals her conviction of criminal homicide, murder in the second degree, a first degree felony in violation of Utah Code Ann. § 76–5–203 (1990). We affirm.

## FACTS

We review the facts in the light most favorable to the jury's verdict. *State v. Pascual,* 804 P.2d 553, 554 (Utah App. 1991).

At approximately 10:00 p.m. on March 7, 1987, Sherard, with friends, went to a party at Vikki Salazar's home. The party had started around 7:00 p.m. When Sherard arrived, about thirty to forty people were present, most of whom were drinking.

A short time after Sherard's arrival, Ruby Kelly, the victim in this case, arrived at the party with two friends, Kristi Bray and Tanya Benns. Sherard did not know Kelly, but did know Benns, who was a member of a rival gang. Benns began arguing with Sherard and others, and in response, Salazar asked Kelly and her friends to leave. Despite Salazar's protestations, Sherard offered to leave instead.

When Sherard reached the front yard of Salazar's house, she met one of her friends whose face was bloody. The friend said that Kelly had hit her. In response, Sherard said that she wanted to fight Kelly, and subsequently a fight broke out between the two women. Kelly had the better of the fight, and eventually Sherard conceded. As Sherard walked away, Benns taunted her to continue the fight. According to one witness, Eloy Esquibel, before resuming the fight, Sherard asked him for a knife, which he gave her. Additionally, at least two witnesses heard someone shout that Sherard had a knife; another testified that he actually saw the knife in Sherard's hand. Sherard testified that Esquibel put "something" into her hand, which she did not look at, but believed was a knife.

Sherard returned, and the fight resumed, moving into the street. According to several witnesses, Sherard delivered several uppercuts to Kelly's torso. Jeff Salazar, one witness to the fight, testified that he saw Sherard uppercut Kelly with the knife in her hand. Todd Kingston, another witness to the fight, testified that after the fight he took a knife from Sherard and threw it away; several other witnesses saw him do so. Additionally, Tommy Quintana, a friend of Sherard, testified that Sherard told him that she had stabbed Kelly. Kelly died from nine stab wounds.

Sherard was subsequently tried by a jury and convicted of murder in the second degree. Sherard appeals that conviction, raising the following four points: (1) Was there sufficient evidence presented at trial to sustain her conviction for murder in the second degree? (2) Did the trial court abuse its discretion in limiting the voir dire of the prospective jurors? (3) Did the trial court properly deny her request for a jury instruction on negligent homicide? (4) Did the trial court commit reversible error in its instructions to the jury on self-defense and mutual combat?

## I. SUFFICIENCY OF THE EVIDENCE

Sherard argues that the evidence presented at trial was insufficient to sustain a conviction for murder in the second

degree.[1] On appeal, we review the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict. *State v. Harman,* 767 P.2d 567, 568 (Utah App.1989) (citing *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)). We do not weigh conflicting evidence, nor do we substitute our own judgment on the credibility of the witnesses for that of the jury. *State v. Hopkins,* 782 P.2d 475, 477 (Utah 1989); *see also State v. Lactod,* 761 P.2d 23, 28 (Utah App.1988). On appeal, we will reverse only if the evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" that the defendant committed the crime of which she was convicted. *State v. Johnson,* 774 P.2d 1141, 1147 (Utah 1989) (citations omitted); *see also Petree,* 659 P.2d at 444; *State v. Jonas,* 793 P.2d 902, 903–04 (Utah App.1990).

The jury was instructed on second degree murder as follows:

> Before you can convict the defendant, Venus Ann Sherard, of the crime of Criminal Homicide—Murder in the Second Degree, as charged in the Information on file in this case, you must find from all of the evidence beyond a reasonable doubt, all of the following elements of that offense.
>
> 1. That on or about the 7th day of March, 1987, in Salt Lake County, State of Utah, the defendant, Venus Ann Sherard, caused the death of Ruby Kelly; and
>
> 2. That said defendant then and there did so: (a) intentionally or knowingly; or (b) intending to cause serious bodily injury to another, she committed an act clearly dangerous to human life; or (c) knowingly acting under circumstances evidencing a depraved indifference to human life, she engaged in conduct which created a grave risk [of] death to another;
>
> 3. That said defendant caused the death in an unlawful manner and without justification.
>
> If you are convinced of the truth of each and every one of the foregoing elements beyond a reasonable doubt, then you must find the defendant guilty of the offense of Criminal Homicide, Murder in the Second Degree as charged in the Information.
>
> If, on the other hand, you find that the State has failed to prove any of these elements beyond a reasonable doubt then you must find the defendant not guilty.

■ Viewing the evidence and inferences therefrom in the light most favorable to the jury's verdict, it is sufficiently conclusive to support the said verdict. As to the first element, all witnesses' accounts of the fight support the conclusion that Sherard caused the death of Kelly. As to the second element, Sherard's own testimony that Eloy Esquibel gave her something "heavy and ... real cold and real hard like metal or something," which she believed was a knife, and that she punched Kelly with it numerous times, evidences, at the very least, a depraved indifference to human

---

1. Subsequent to the appeal in this case, another panel of this court clarified our marshaling requirement and applied it to criminal jury trials. *State v. Moore,* 802 P.2d 732, 738–39 (Utah App. 1990). *Moore* held that in order for an appellant's sufficiency of the evidence claim to be reviewed on the merits, the appellant must marshal the evidence in support of the jury's verdict and demonstrate that, even when viewed in the light most favorable to that verdict, the evidence is insufficient to support the verdict below.

In the case at bar, Sherard has neither marshaled the evidence in support of the jury's verdict, nor shown that, in spite of this evidence, the verdict below is unsupportable. Appellant's brief contains no references whatsoever to the evidence presented at trial. In an apparent effort to respond to the marshaling requirement in *Moore,* appellant's reply brief contains a matrix that lists various witnesses and their testimony on a number of issues. However, upon examination, this matrix amounts to no more than an outline of transcript citations. The reply brief contains no indication as to what evidence supports the jury's verdict or what evidence opposes it, simply leaving it to us to decipher the chart. Nor does the reply brief contain any argument as to why the evidence is insufficient to support the jury's verdict in this case. In other words, Sherard has plainly failed to present a record for us to review for sufficiency.

However, since *Moore,* by its own terms, is meant to apply only prospectively, *id.* at 739, and since this appeal was filed prior to the court's decision in *Moore,* we review Sherard's sufficiency of the evidence claim on the merits.

life. This conclusion is further supported by the testimony of numerous witnesses who recounted Sherard's desire to fight Kelly, Eloy Esquibel's testimony that Sherard asked him for a knife before resuming the fight, and various witnesses' accounts of the second fight, including Jeff Salazar's testimony that he actually saw Sherard uppercut Kelly with a knife in her hand. As to the third element, although Sherard testified that she acted in self-defense, several witnesses testified that Sherard returned to Kelly and, without justification, resumed the fight. Given the amount of evidence which supports the State's case, we cannot say that reasonable minds must have entertained a reasonable doubt that Sherard was guilty of second degree murder, and therefore conclude that the evidence was sufficient to support the jury's verdict.

## II. VOIR DIRE

Sherard next claims that the trial court erred in limiting the voir dire of the prospective jurors. Specifically, she objects to the extent of the trial court's inquiry as to: (1) the relationship or contact between prospective jurors and Ruby Kelly's family, (2) group affiliations, (3) experience with and attitude toward alcohol, (4) experience with and attitude toward violence, and (5) exposure to publicity.

█ Voir dire exists to detect bias justifying a challenge for cause and to assist counsel in the intelligent use of peremptory challenges. *Doe v. Hafen*, 772 P.2d 456, 457 (Utah App.) (citing *State v. Worthen*, 765 P.2d 839, 844 (Utah 1988) and *Hornsby v. Corporation of the Presiding Bishop*, 758 P.2d 929, 932 (Utah App.), *cert. denied*, 773 P.2d 45 (Utah 1988)), *cert. granted* 789 P.2d 33 (Utah 1989). The extent of voir dire is within the discretion of the trial judge, as long as counsel is given adequate information with which to evaluate prospective jurors. *Id.* Moreover, "whether the judge has abused that discretion is determined, not by considering isolated questions, but 'considering the totality of the questioning.'" *Id.* at 457–58 (quoting *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988)).

█ Sherard's first voir dire issue, concerning the relationship or contact between prospective jurors and Ruby Kelly's family, was not properly preserved for appeal. When asked to pass the jury for cause, defense counsel objected to the omission of several requested areas of inquiry, including the other matters raised on appeal herein. However, defense counsel did not object to the lack of inquiry into the relationship or contact between prospective jurors and Ruby Kelly's family. Utah Rule of Criminal Procedure 20 provides that counsel "state his objections to the actions of the court and the reasons therefor." *See also Doe v. Hafen*, 772 P.2d at 458. Since defense counsel failed to do so as to this issue, it was not properly preserved for appeal.

█ Sherard's second claim of inadequate voir dire, group affiliations of the prospective jurors, also fails. The two requested questions in this area that were not asked by the trial court were:

Do you belong to any clubs or organizations? Which ones?

What kinds of hobbies and leisure time activities do you enjoy?

On appeal, Sherard claims that this area of inquiry would have revealed whether potential jurors could relate to the lifestyle of gang members or find such lifestyle opprobrious. However, she fails to support this blanket claim with any argument or analysis as to how either of the requested questions is probative of prospective jurors' opinions on the lifestyle of gang members. Moreover, this was never given as a reason for requesting these questions below. Since the trial courts have been instructed not to allow "inordinately extensive or unfocused questioning," *id.* at 457, we find no abuse of discretion on behalf of the trial court in refusing to ask these questions either.

█ On the issue of alcohol, the trial court asked the potential jurors:

There may be evidence during the course of this case that there were alcoholic beverages being consumed by the defendant, the victim and maybe others in

their surroundings. Do any of you believe that it is simply morally wrong to consume alcoholic beverages in all cases and under all circumstances, if so, would you raise your hand?

There were no affirmative responses to this question. Sherard claims that this question was insufficient because it failed to address potential jurors' attitudes toward and experiences with alcohol. As to the former, we are of the opinion that this is precisely the sort of question which is designed to elicit potential jurors' attitudes toward alcohol. As to the latter, it is the trial court's duty to "protect juror privacy." *State v. Ball*, 685 P.2d 1055, 1060 (Utah 1984). To that end, it is the trial court's duty to forbid defense counsel to "conduct an inquisition into the private beliefs and experiences of a venireman." *Id.* On the facts of this case, it was sufficient for the trial court to inquire on the attitudes of the potential jurors as to alcohol, without specifically inquiring as to their experiences with it. Accordingly, we find no abuse of discretion on this matter.

■ Next, Sherard complains as to the inadequacy of investigation into the potential jurors' experiences with and attitudes toward violence. With respect to this issue, the trial court asked four questions: "[H]ave any of you been involved in a fist fight before?"; "Have any of you been in a fist fight or in a fight where weapons have been used?"; "[Have] any of you [ ] been witnesses to a serious injury as a result of a fight involving weapons ...?"; and "Do any of you believe that there is no circumstance or that it is morally wrong to be in a fight at all situations ...?" Taken as a whole, these questions were designed to and did elicit responses on the prospective jurors' experiences with and attitudes toward violence. Thus, the trial court's refusal to inquire further was not an abuse of discretion.

■ The final issue with regard to voir dire is Sherard's claim that the jurors were not adequately questioned as to their exposure to publicity. The judge conducted the following inquiry:

Have any of you heard anything about this case, if so, would you raise your hand? You can say yes or no to the question. Have you heard about this case?

. . . .

All right. Would your familiarity with the reporting cause you any reason to believe you could not be fair and impartial in this case?

. . . .

If you read something in the newspaper would you be caused to believe that this would be true simply because it's in the newspaper?

. . . .

If you heard testimony here in conflict with that which you read in the newspaper would you be willing to follow that which you believed from the courtroom that you heard in testimony rather than that which you read in the newspaper?

Sherard's objection to exposure to pre-trial publicity concerns the court's failure to ask about specific magazines which the jurors read or to which they subscribed. However, defense counsel presented no argument to connect specific magazines with pre-trial publicity below, nor does counsel present such argument here. It is abundantly clear that the questions asked, in fact, revealed more about jurors' familiarity with pre-trial publicity than a vague question about specific magazines subscribed to and read could possibly have elicited. Therefore, again we find no abuse of discretion.

In conclusion, the trial court's decision to limit voir dire did not prevent detection of bias, nor did it limit defense counsel's ability to intelligently use peremptory challenges. Accordingly, we find no abuse of discretion in the limitation of voir dire by the trial court in this case.

### III. NEGLIGENT HOMICIDE

■ Sherard next asserts that the trial court erred in failing to give her requested jury instruction on negligent homicide. We review a trial court's refusal to give a requested instruction under a correction of error standard, granting no particular def-

erence to the trial court's ruling. *Carpet Barn v. Department of Transp.*, 786 P.2d 770, 775 (Utah App.) (citing *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989)), *cert. denied* 795 P.2d 1138 (Utah 1990).

Although "a defendant's requested lesser included offense instruction must be given when there is some evidence which supports the theory asserted by defendant," *State v. Standiford*, 769 P.2d 254, 266 (Utah 1988) (citing *State v. Baker*, 671 P.2d 152, 157–59 (Utah 1983)), there must also be a " 'rational basis for a verdict acquitting the defendant of the offense charged and convicting [her] of the included offense.' " *State v. Larocco*, 794 P.2d 460, 462 (Utah 1990) (quoting *Baker*, 671 P.2d at 159). Thus, we must examine: (1) if there is sufficient evidence to support Sherard's request for a negligent homicide instruction, and (2) whether there is a rational basis for a verdict acquitting Sherard of murder in the second degree and manslaughter, on which the jury was also instructed, but still convicting her of negligent homicide.

Negligent homicide and reckless manslaughter are related concepts, both requiring that defendant's conduct be " 'a gross deviation' from the standard of care exercised by an ordinary person." *Standiford*, 769 P.2d at 267. The only difference is that manslaughter requires that the defendant was actually aware of the risk of death, while in negligent homicide, the defendant was not, but should have been aware of such risk. *Id.* (citing *Boggess v. State*, 655 P.2d 654, 656–58 (Utah 1982) (Stewart, J., concurring)).

Our review of the evidence indicates that Sherard's request for a negligent homicide instruction is unsupportable. Sherard's own testimony was that Eloy Esquibel gave her something "heavy and ... real cold and real hard like metal or something," which she believed was a knife, and that she punched Kelly with it several times. Additionally, after the fight, she told Tommy Quintana, "I stabbed her, I think I stabbed her." This testimony is inconsistent with negligent manslaughter's requirement that the defendant be unaware

of the risks associated with her conduct. In fact, Sherard offers no evidence from which a jury could conclude that she was unaware of the risks involved. Without such evidence, we cannot justify an instruction on negligent homicide.

Moreover, as noted in Section I above, the evidence presented at trial was sufficient to convict Sherard of the greater offense, second degree murder. We, therefore, find that there was no rational basis for a verdict acquitting Sherard of second degree murder and manslaughter and convicting her of negligent homicide.

Lastly, in *Standiford*, the Utah Supreme Court, on similar facts, held that "since the jury convicted of second degree murder despite the fact that an instruction was given on the lesser included offense of manslaughter, failure to give a negligent homicide instruction was, at very best, harmless error." *Standiford*, 769 P.2d at 267. Accordingly, we hold that the trial court did not err in refusing to instruct the jury on negligent homicide.

## IV. JURY INSTRUCTIONS

Sherard also contends that the trial court committed reversible error in instructing the jury on self-defense and mutual combat. Specifically, she argues that one of the instructions concerning self-defense erroneously stated that the test of the reasonableness of her actions was an objective, not subjective, test; and that the mutual combat instruction was irrelevant and confusing.

"[B]eyond the substantive scope, correctness, and clarity of the jury instructions, their precise wording and specificity is left to the sound discretion of the trial court." *State v. Aly*, 782 P.2d 549, 550 (Utah App. 1989) (citations omitted). However, the said instructions must not incorrectly or misleadingly state material rules of law. *Id.*

Sherard argues that Jury Instruction Number 26 erroneously stated that self-defense is governed by an objective, not subjective, standard. Instruction Number 26 reads:

The reasonableness of a belief that a person is justified in using force that would cause death or serious bodily injury against another shall be determined from the viewpoint of a reasonable person under the then existing circumstances.

Utah Code Ann. § 76–2–402(1) (Supp. 1991) provides that, in order to successfully assert a claim of self-defense, a defendant must "reasonably believe[ ] that such force is necessary to defend [herself] . . . against such other's imminent use of unlawful force." We have previously stated that reasonable in the context of section 76–2–402(1) means "objectively reasonable." *State v. Duran*, 772 P.2d 982, 985 (Utah App.1989) (quoting *In re R.J.Z.*, 736 P.2d 235, 236 (Utah 1987)). This instruction plainly complies with the objective standard requirement; therefore, the trial court did not err in giving the said instruction.

Secondly, Sherard argues that the mutual combat instruction that was given was irrelevant and confusing. The instruction in question, Jury Instruction Number 18, provides:

> If you find that either party was a party to mutual combat, or other consensual altercation, and that during the course of the combat or altercation, either party used a deadly weapon, then you must not consider the consent of the victim in the encounter as a defense to the crime of Criminal Homicide.

 Almost every account of the fight between Sherard and Kelly indicates that it was, indeed, mutual combat. It was therefore entirely appropriate for the trial court to clarify by means of instruction that even if Kelly had mutually agreed to fight Sherard, this did not excuse Sherard's use of a deadly weapon in that fight. This is true, even if Kelly is viewed as the initial aggressor. *See State v. Starks*, 627 P.2d 88, 90 (Utah 1981) *and cases cited therein.* Since the precise wording of jury instructions is left to the sound discretion of the trial court, *State v. Lopez*, 789 P.2d 39, 45 (Utah App.1990) we hold that it was proper for the trial court to give the mutual combat instruction in question.

## CONCLUSION

In conclusion, we hold that: (1) the evidence presented at trial was sufficient to sustain Sherard's conviction for murder in the second degree; (2) The trial court did not abuse its discretion in limiting the voir dire of the prospective jurors; (3) the trial court properly denied defendant's request for a jury instruction on negligent homicide; and (4) the trial court did not err in instructing the jury on self-defense and mutual combat. Accordingly, we affirm.

BILLINGS, J., concurs.

ORME, J., concurs in the result.