STATE of Utah, Plaintiff and Appellee,

v.

**Jose DIAZ, Defendant and Appellant.**

**No. 920847–CA.**

Court of Appeals of Utah.

Aug. 24, 1993.

---

Ronald S. Fujino and Charles F. Loyd, Jr., Salt Lake City, for defendant and appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for plaintiff ·and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Jose Diaz appeals his conviction of murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1993). We affirm.

## FACTS

On appeal from a jury verdict, we recite the facts in the light most favorable to that verdict. *State v. Sherard,* 818 P.2d 554, 556 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992); *accord State v. Hamilton,* 827 P.2d 232, 233–34 (Utah 1992); *State v. Gray,* 851 P.2d 1217, 1219 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

On November 7, 1991, Jose Diaz, and his brother, Carlos Garcia, went to the Raging Bull Tavern in Salt Lake City, where Mario "Chino" Lopez and some friends were playing pool. Shortly after Diaz and Garcia entered the tavern, Lopez and at least one other person attacked them with pool cues and balls.

Kenneth Washington, the doorman and bouncer, attempted to break up the fight. He separated Diaz and Lopez and told them, "Not in the bar." The parties moved outside with pool cues and balls in hand. Washington closed the front door, but before he could lock it, Lopez and his companion came running back into the bar and headed toward the back door of the bar. Washington again moved to close the door, but backed away when a hand holding a small handgun appeared through the partially open doorway. Diaz and Garcia came running into the bar.

Washington watched as Diaz ran toward the back of the bar, where Lopez had slipped and fallen on the dance floor. Lopez was on his knees and had one hand on the floor, attempting to stand up. Washington heard shouts of "get him, get him" and then saw Diaz approach Lopez, point a gun at his chest and pull the trigger. Diaz pulled the trigger a second time, but the gun misfired. Diaz and Garcia then ran out the back door.

Washington went to the back door to see where Diaz and Garcia had gone, but could not find them. He closed the door and asked the bartender, Arnold Medina, to call 911. Medina was already speaking with a 911 operator, and police officers and paramedics arrived shortly thereafter. The investigating officers found no weapons on or near Lopez. Paramedics administered emergency treatment to Lopez and rushed him to LDS Hospital, where he died from a single gunshot wound to the chest. Diaz was subsequently apprehended and charged by information with murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1993).

At trial, the State called Dr. Maureen Frikke, the medical examiner who performed the autopsy on Lopez. Dr. Frikke testified that Lopez had suffered at least sixteen "blunt force wounds" to his head and neck, and several "defensive wounds" on his forearms and hands. Dr. Frikke did not find any injuries that she characterized as "offensive injuries." Additionally, Dr. Frikke testified that the bullet that killed Lopez had a "slightly upward" trajectory.

The State also called Richard Minyard, who had been an inmate at the Salt Lake County Jail with Diaz. Minyard testified that Diaz admitted killing Lopez. According to Minyard, Diaz told him that he and Garcia had Lopez down on the ground and that he told Garcia to shoot Lopez. When Garcia refused, Diaz took the gun from him and shot Lopez himself.

Diaz did not testify at trial, but did call several witnesses whose testimony disputed the facts set forth in the State's case. Key among them was Diaz's brother, Carlos Garcia. Garcia testified that he was the one responsible for shooting Lopez, but that he was acting in self-defense. Garcia claimed that as he entered the bar, Lopez punched him in the face, breaking his nose. After the men were ordered out of the bar by Washington, Garcia claimed that he was stabbed in the back by Lopez. Feeling that his life was in danger, Garcia pulled a gun out of his pocket. At the sight of the gun, Lopez ran back into the bar, and Garcia chased after him. After Lopez picked up a bar stool and threw it at him, Garcia shot Lopez in the chest. Garcia said that Lopez was standing when he shot him and had not fallen to the ground as the State's witnesses had testified.

Diaz also called Johanna Lindstrom, a patron at the Raging Bull on the night of the shooting. She testified that she saw Garcia chase Lopez with a gun in his hand. She did not see the actual shooting, however, because she had fled to the bathroom. On cross-examination, the State elicited testimony from Lindstrom that she was waiting to be sentenced on a third degree felony. Diaz objected, arguing that such was improper evidence for impeachment purposes. The objection was overruled.

After Diaz had called his last witness, the jury was excused and the parties presented arguments on the admissibility of character evidence of the victim, Lopez. Diaz's counsel argued that such was necessary character evidence for the purpose of buttressing a self-defense claim. The State responded that such evidence was irrelevant to the case because only Garcia, not Diaz, had raised a claim of self-defense. Diaz's defense was not based on a self-defense theory, but instead based on his claim that he did not commit the murder. The trial court refused to admit the said evidence.

Following the four-day trial, Diaz moved for an instruction defining the elements of aggravated assault and specifying that such was a "forcible felony" for the purposes of Utah Code Ann. § 76–2–402(1) (Supp.1993), Utah's self-defense statute. The motion was denied. The jury subsequently found Diaz guilty of murder, a

first degree felony, in violation of Utah Code Ann. § 76-5-203 (Supp.1993).

Diaz appeals, claiming that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in admitting defense witness Lindstrom's testimony of her pending sentencing on a third degree felony; (3) the trial court erred in refusing to admit character evidence of the victim, Lopez; and (4) the trial court erred in refusing to include an instruction defining the elements of aggravated assault and specifying that such was a forcible felony for the purposes of self-defense.

## SUFFICIENCY OF THE EVIDENCE

■ "On appeal, we review the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict." *State v. Sherard*, 818 P.2d 554, 557 (Utah App.1991) (citation omitted), *cert. denied*, 843 P.2d 516 (Utah 1992). "We do not weigh conflicting evidence, nor do we substitute our own judgment on the credibility of the witnesses for that of the jury." *Id.* (citations omitted); *accord State v. Howell*, 649 P.2d 91, 97 (Utah 1982). Moreover, "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." *Howell*, 649 P.2d at 97 (citation omitted). "[W]e will reverse only if the evidence 'is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt' that the defendant committed the crime of which [he] was convicted." *Sherard*, 818 P.2d at 557 (quoting *State v. Johnson*, 774 P.2d 1141, 1147 (Utah 1989)) (citations omitted).

Utah Code Ann. § 76-5-203 (Supp.1993) provides, in pertinent part:

(1) Criminal homicide constitutes murder if the actor:

(a) intentionally or knowingly causes the death of another;

(b) intending to cause serious bodily injury to another commits an act clearly dangerous to human life that causes the death of another; [or]

(c) acting under circumstances evidencing a depraved indifference to human life engages in conduct which creates a grave risk of death to another and thereby causes the death of another

. . . .

Reviewing the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, we are unable to say that reasonable minds must have entertained a reasonable doubt as to Diaz's guilt. *See Sherard*, 818 P.2d at 557. First, Washington, the doorman and bouncer at the Raging Bull, testified that he watched Diaz approach Lopez, point a gun at his chest and pull the trigger. Secondly, the medical examiner, Dr. Frikke, testified that Lopez died from a single gunshot wound to the chest. Additionally, Richard Minyard, an inmate at the Salt Lake County Jail with Diaz, testified that Diaz admitted killing Lopez, telling him that (1) he and Garcia had Lopez down on the ground; (2) he told Garcia to shoot Lopez, and (3) when Garcia refused, Diaz took the gun from him and shot Lopez himself. The above evidence establishes that Diaz engaged in conduct which created a grave risk of death to another, and thereby caused the death of another. Moreover, the evidence, taken together with the reasonable inferences therefrom, indicates that in so doing, Diaz acted with, at the very least, a depraved indifference to human life. Accordingly, the evidence was sufficient to support the jury verdict in this case.[1]

---

1. Diaz nonetheless argues that the Utah Supreme Court's recent decision in *State v. Workman*, 852 P.2d 981 (1993) compels reversal in this case. In that case, the court stated that "[i]n some unusual circumstances ... a reviewing court may reassess witness credibility." *Id.* 852 P.2d at 984. Diaz tries to fit this case within the above exception on the basis of Dr. Frikke's testimony that the bullet had a "slightly up-ward" trajectory. However, the State demonstrated both at trial and on appeal that a "slightly upward" trajectory was not incompatible with its theory of the case. Since we may only reassess evidence when it is "so inconclusive or inherently improbable that it could not support a finding of guilt beyond a reasonable doubt," *id.* (citations omitted), it is improper to do so here.

## IMPEACHMENT EVIDENCE

Diaz argues that the trial court erred in admitting certain impeachment evidence concerning a defense witness, Johanna Lindstrom. Specifically, he objects to the following question by the prosecutor: "Ms. Lindstrom, you are being sentenced on a felony, Monday, right?" Lindstrom answered in the affirmative.

Whether evidence is admissible is a question of law, which we review for correctness, incorporating a "clearly erroneous" standard of review for subsidiary factual determinations. *State v. Reed*, 820 P.2d 479, 481 (Utah App.1991) (citing *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991)); *accord State v. Gray*, 851 P.2d 1217, 1224 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993). Furthermore, "[i]n reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected." *State v. Oliver*, 820 P.2d 474, 479 (Utah App.1991) (citations omitted), *cert. denied*, 843 P.2d 516 (Utah 1992).

■ The parties agree that under *State v. Duncan*, 812 P.2d 60 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991), the trial court erred in admitting Lindstrom's pending sentencing as impeachment evidence because such is not admissible as a prior conviction under Utah Rule of Evidence 609(a). *See id.* at 62–63. Accordingly, we proceed by examining whether the trial court's decision to admit that evidence affected Diaz's substantial rights. *See Oliver*, 820 P.2d at 479.

■ In *State v. Bruce*, 779 P.2d 646 (Utah 1989), the Utah Supreme Court stated that "[t]he standard for reversal in cases involving an erroneous failure to exclude prior convictions is whether absent the error, there was a reasonable likelihood of a more favorable result for the defendant." *Id.* at 656 (citations omitted). "Erroneous admission of evidence is harmless if there is convincing, properly admitted

evidence of all essential elements of the case." *Id.* (quoting *United States v. Baker*, 693 F.2d 183, 189 (D.C.Cir.1982)) (citation omitted).

Applying the foregoing law to the facts of this case, we cannot say that, even had the improper impeachment been excluded, Diaz would have had a reasonable likelihood of a more favorable result. The properly admitted evidence presented ·by the State here was convincing and, as noted above, sufficient to support all of the essential elements of the State's case against Diaz. Thus, the trial court's erroneous admission of Lindstrom's pending sentencing was harmless error.

## CHARACTER EVIDENCE OF THE VICTIM

■ Diaz argues that the trial court erred in refusing to admit character evidence of the victim, Mario "Chino" Lopez. Again, the trial court's determination with regard to the admissibility of evidence is reviewed for correctness, incorporating a "clearly erroneous" standard for the review of the underlying factual findings. *State v. Reed*, 820 P.2d 479, 481 (Utah App.1991) (citing *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991)); *accord State v. Gray*, 851 P.2d 1217, 1224 (Utah App.), *cert. denied*, —— P.2d —— (Utah 1993).

Diaz contends that evidence of Lopez's prior conviction for assault should have been admitted in support of a self-defense theory on the ground that such evidence shows Lopez's assaultive nature. The State responds that since Diaz's counsel did not have a certified copy of the prior conviction, but proposed to read it from Lopez's "rap sheet," the trial court properly refused to admit the said evidence.[2]

In *State v. Peterson*, 560 P.2d 1387 (Utah 1977), the Utah Supreme Court held that evidence of a prior conviction is only admissible if it is shown by (1) the oral testimony of the witness himself, (2) the court record

---

2. Additionally, the State argues that since Diaz's defense was not based on a self-defense theory, but instead based on his claim that he did not commit the murder, such evidence is irrelevant to the case. However, given our resolution of this issue on the other ground argued by the State, we decline to address this argument on appeal.

of such conviction, or (3) a properly certified copy thereof. *Id.* at 1390 (quoting *Wright v. State,* 38 Ala.App. 64, 79 So.2d 66, 68 (1954), *cert. denied,* 262 Ala. 420, 79 So.2d 74 (1955)). The reason for such a rule is plain: oral testimony of the witness is admissible as an admission against interest, and the court record of the conviction, or a certified copy thereof, qualifies as the best evidence of the conviction. *See id.* It is readily apparent that a "rap sheet," which does not fit within any of the permissible means of admitting evidence of a prior conviction, is not a properly reliable method of establishing the existence of that prior conviction. Accordingly, we hold that the trial court did not err in refusing to permit the reading of Lopez's "rap sheet" as evidence of Lopez's prior conviction for assault.[3]

## JURY INSTRUCTION

█ Diaz argues that the trial court erred in refusing to give his requested instruction defining the elements of aggravated assault and specifying that such assault was a "forcible felony" for the purposes of Utah Code Ann. § 76–2–402(1) (Supp.1993), Utah's self-defense statute. He asserts that the said instruction was necessary to adequately inform the jury that Lopez's conduct prior to the shooting amounted to a forcible felony, thereby justifying the use of deadly force in self-defense.

We review a trial court's refusal to give a requested instruction for correctness, granting no particular deference to the trial court's ruling. *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992); *accord State v. Sherard,* 818 P.2d 554, 559–60 (Utah App. 1991), *cert. denied,* 843 P.2d 516 (Utah 1992).

"A trial court has a duty to instruct the jury on the law applicable to the facts of the case." *Hamilton,* 827 P.2d at 238 (citing *State v. Potter,* 627 P.2d 75, 78 (Utah 1981)). While a defendant has a right "to have his [or her] theory of the case presented to the jury in a clear and understandable way," *id.* (quoting *Potter,* 627 P.2d at 78), "it 'is not error to refuse a proposed instruction if the point is properly covered in the other instructions.'" *Id.* (quoting *State v. Sessions,* 645 P.2d 643, 647 (Utah 1982)). Moreover, "the law in Utah is that jury instructions are to be considered as a whole." *State v. Brooks,* 638 P.2d 537, 542 (Utah 1981) (citations omitted). "When taken as a whole if they fairly tender the case to the jury, the fact that one or more of the instructions, standing alone, are not as full or accurate as they might have been is not reversible error." *Id.* (citation omitted).

In the case at bar, Jury Instruction number sixteen, which virtually mirrors section 76–2–402(1), reads, with our emphasis:

A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such force is necessary to defend

---

3. Moreover, even if Diaz's counsel had a certified copy of Lopez's prior conviction of assault, we would nonetheless hold that the trial court's refusal to admit such evidence was harmless error because, even had such evidence been included, we are not convinced that there is a reasonable likelihood of a more favorable outcome for Diaz. *See State v. Johnson,* 784 P.2d 1135, 1140 (Utah 1989); *State v. Harrison,* 805 P.2d 769, 781 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991). In the first place, Diaz's defense was not that he acted in self-defense, but that he did not commit the crime. Thus, Lopez's assaultive nature is irrelevant to Diaz's defense. Secondly, Utah Code Ann. § 76–2–402(1) (Supp.1993) provides that in order to successfully assert a self-defense claim, a defendant must "reasonably believe[ ] that such force is necessary to defend himself ... against such

other's imminent use of unlawful force...." Given the evidence (1) that Lopez was attempting to flee; (2) that he was on the floor struggling to get up at the time he was shot; and (3) that no weapons were found on or around him, it is not apparent how evidence of Lopez's prior conviction of assault is relevant to a claim of self-defense. *See, e.g., State v. Minnish,* 560 P.2d 340, 341 (Utah 1977) ("Generally, for evidence pertaining to the [assaultive] character of the victim to be admitted, the defendant must show that he acted in self-defense...."). Thus, our confidence in the verdict is not undermined by the trial court's refusal to admit evidence of Lopez's prior conviction for assault, *see State v. Knight,* 734 P.2d 913, 920 (Utah 1987); *Harrison,* 805 P.2d at 781, and the court's refusal to do so was harmless error.

himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force is necessary *to prevent* death or serious bodily injury to himself or a third person, *or prevent* the commission of a forcible felony.

A person is not justified in using force under the circumstances specified above if that person:

(a) initially provokes the use of force against himself with the intent to use force as an excuse to inflict bodily harm upon the assailant; or

(b) is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony; or

(c) was the aggressor or was engaged in a combat by agreement, unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other [person] notwithstanding continues or threatens to continue the use of unlawful force.

Applying the foregoing law to the facts of this case, we hold that the trial court did not err in refusing to give Diaz's requested instruction. First, since Lopez's attack on Diaz and Garcia with pool cues and balls occurred prior to the shooting, Diaz's actions cannot be justified as an attempt to prevent that attack. Thus, the fact that the jury was not instructed as to the defini-

tion of aggravated assault was not reversible error. Second, since the instruction above adequately instructed the jury on Diaz's self-defense theory of the case, the court's refusal to include a further instruction as to the elements of aggravated assault was not reversible error. *See Hamilton*, 827 P.2d at 238. This is especially true in light of the fact that the instructions, as a whole, fairly tendered the case to the jury. *See Brooks*, 638 P.2d at 542. Accordingly, we hold that the trial court did not err in refusing to include Diaz's requested instruction.

## CONCLUSION

We hold that (1) the evidence was sufficient to support Diaz's conviction of murder, (2) while the trial court erred in admitting impeachment testimony of Lindstrom's pending sentencing, such error was harmless, (3) the trial court did not err in refusing to admit character evidence of the victim, and (4) the trial court did not err in refusing to instruct the jury on the elements of aggravated assault. Accordingly, Diaz's conviction is affirmed.

BILLINGS and JACKSON, JJ., concur.