**STATE of Utah, Plaintiff and Appellee,**

v.

**Angelo Gomez WRIGHT, Defendant and Appellant.**

**No. 920845–CA.**

Court of Appeals of Utah.

April 13, 1995.

Charles Franklin Loyd, Jr., Salt Lake City, for appellant.

Kris Leonard and Jan Graham, Salt Lake City, for appellee.

Before BENCH, BILLINGS and ORME, JJ.

BENCH, Judge:

Defendant Angelo Gomez Wright appeals his conviction for aggravated sexual assault, a first degree felony, in violation of Utah Code Ann. § 76–5–405 (1990). We affirm.

## FACTS

On appeal from a jury verdict, the facts are recited in a light most favorable to the jury's verdict. *State v. Diaz*, 859 P.2d 19, 20 (Utah App.1993); *State v. Gray*, 851 P.2d 1217, 1219 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993).

In September 1991, S.J., a forty-year-old single mother, met defendant at the Hilton Hotel in Salt Lake City where they were both employed. Defendant had been paroled from the Utah State Prison in August 1991. A friendship developed between S.J. and defendant, although they rarely saw each other outside of work. In late October 1991, S.J. used her car to help defendant move from his friend's house to the Covered Wagon Motel in Salt Lake City. Defendant remained at the motel for less than two weeks, during which time S.J. visited him once. During the visit, S.J. and defendant engaged in consensual sexual intercourse, the only such incident they had during their relationship.

S.J. testified that during this time she believed she and defendant were becoming "pretty good friends" and that their relationship was getting "fairly close." S.J. helped defendant locate an apartment and in early November helped him move into The Ritz apartments.

On November 8, defendant injured his back while working at the Hilton. The Hilton required that defendant obtain a medical release from his doctor before he would be allowed to return to work. Defendant arranged for S.J. to pick him up on November 10 to drive him to the hospital to see his doctor. After work on November 10, S.J. proceeded to defendant's apartment to drive him to the hospital. Defendant invited S.J. in, and she assented, believing that he needed to finish getting ready. Defendant and S.J. went into defendant's bedroom where defendant offered her a drink. S.J. soon realized that they were not going to go to the hospital. Defendant and S.J. sat on defendant's bed with their backs against the headboard, drinking, watching television, and talking for several hours without touching each other and without any reference to sex. During the evening, two visitors came to defendant's apartment, stayed for a few minutes, and then left. S.J. testified that she did not see either visitor.

At about 10:00 p.m., S.J. told defendant that she was going to go home. Defendant started yelling at S.J., calling her derogatory names, and telling her that she was not going anywhere. S.J. became frightened and again told defendant that she was going to leave, at which point defendant began to hit her. Defendant then ordered S.J. to take off her clothes. S.J. testified that she complied with defendant's command so he would not hit her again. Despite S.J.'s compliance, defendant continued to hit her. S.J. continued to request that defendant allow her to go home and tried not to scream so that she would not provoke any more attacks from defendant. Defendant eventually pushed S.J. onto the bed and held her arms while he sodomized and raped her, ignoring her repeated requests that he stop. S.J. testified that she did not physically resist because she was afraid defendant would hit her again.

When defendant finished, S.J. attempted to get dressed and leave. Defendant allowed S.J. to go into the bathroom but refused to let her leave his apartment. Defendant continued to verbally assault S.J. and, when she defended herself, defendant hit her again. S.J. finally quit speaking and tried to go to sleep, hoping that her silence would prevent defendant from continuing to assault her. Defendant hit S.J. on or around her head at

least three times before he sodomized and raped her and three or four times afterwards, causing bruising and drawing blood.

S.J. awoke before defendant the next morning. She took a bath because she felt "dirty" and then returned to the bedroom for her clothes. Defendant was awake when S.J. returned to the bedroom and she dressed as quietly as possible, hoping that he would not try to prevent her from leaving. Defendant went into the bathroom, and S.J. took her clothes into the living room to finish dressing. When S.J. heard defendant exit the bathroom she grabbed her purse, unbolted the door, and hurried out. Defendant went to the front door but did not pursue S.J.

S.J. did not contact the police until five or six days after the incident. She testified that she did not contact the police because defendant had a key to her apartment and she was afraid for herself and her four children and she was not sure that defendant would be arrested if she reported the incident. She did tell several people, including her oldest daughter and the personnel manager at the Hilton Hotel, both of whom saw her bruises.

Defendant was charged with aggravated sexual assault, a first degree felony, in violation of Utah Code Ann. § 76-5-405 (1990). At trial, defendant's account of the facts differs markedly from S.J.'s, and from his own statements at both a parole pre-revocation hearing and a preliminary hearing. Defendant testified that S.J. decided to stay the night on her own volition. When S.J. arrived she used some cocaine and gin that she had brought with her and then took a bubble bath that defendant had prepared for her. When she had finished her bath, defendant took a bath. After defendant finished his bath, he and S.J. began kissing each other. S.J. then asked him to touch her and to perform various sexual acts. Defendant complied with S.J.'s requests, but testified that he did not become aroused.

Defendant also testified that some friends stopped by his apartment while S.J. was there. Defendant claimed that one of them, "Jose," was drunk when he came and that he stayed for approximately three hours. While defendant was in the front room talking to Jose, S.J. emerged naked from the bedroom and did not attempt to conceal herself. At this point, S.J. took some more cocaine and then she and Jose engaged in sexual intercourse. Defendant further testified that he refused multiple offers from S.J. and Jose to use their drugs, and repeatedly told them to get rid of the drugs and alcohol because it was a violation of the terms of his parole to have drugs or alcohol.[1] Defendant claimed that despite his efforts to stop S.J., she continued to consume cocaine and drank half a bottle of gin. Defendant also stated that S.J. repeatedly walked around the apartment naked, despite defendant's efforts to protect her modesty. Defendant finally denied that he hit S.J. and claimed that he gave her gas money the following morning when she left.

On March 27, 1992, a jury convicted defendant as charged. Thereafter the trial court sentenced defendant to a minimum mandatory term of ten years to life in the Utah State Prison. This appeal followed.

## ISSUES

Defendant raises the following issues on appeal: (1) whether the delay in reporting the offense to the police rendered the evidence insufficient to support the jury's verdict; (2) whether several remarks made by the prosecution during closing arguments constitute prosecutorial misconduct warranting reversal of the jury's verdict; (3) whether the trial court erred in ruling that defendant was not denied effective assistance of counsel; and (4) whether the trial court erred in evaluating mitigating and aggravating factors when it sentenced defendant.

## ANALYSIS

### Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to support the jury's verdict. Specifically, defendant asserts that S.J.'s delay in reporting the incident for five or six days prevented the standard rape examination designed to preserve physical evidence and all

---

1. At trial, Jose's testimony did not corroborate defendant's version of the facts.

but compels the conclusion that she fabricated the incident. We disagree.

■ We will upset the jury verdict "only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he ... was convicted." *State v. Scheel*, 823 P.2d 470, 472 (Utah App.1991) (citations omitted); *accord State v. Sherard*, 818 P.2d 554, 557 (Utah App.1991), *cert. denied*, 843 P.2d 516 (Utah 1992). "We do not weigh conflicting evidence, nor do we substitute our own judgment on the credibility of the witnesses for that of the jury." *Diaz*, 859 P.2d at 22 (citing *Sherard*, 818 P.2d at 557); *accord State v. Howell*, 649 P.2d 91, 97 (Utah 1982).

■ The delay in reporting the incident is an issue that goes to S.J.'s credibility, which is an issue for the jury. *State v. Dunn*, 850 P.2d 1201, 1213 (Utah 1993).[2] In the present case, the jury was presented with S.J.'s testimony as to why she did not immediately report the incident to police. S.J. testified that defendant had a key to her home, which he had refused to return, and she was afraid that if she reported the incident defendant might retaliate against her or her children. She further stated that she did not know if the police would take defendant into custody if she reported the incident. S.J. also testified that she told several individuals about the incident, including the personnel director at the Hilton Hotel who in turn testified that she saw S.J.'s bruises and took pictures of S.J.'s face. S.J. stated that she reported the incident only after several people, including her sixteen-year-old daughter, urged her to do so. In addition to S.J.'s testimony, other evidence corroborated parts of her version of the incident. Defendant claimed, under his version of the facts, that when he called S.J. on November 15 to plan a weekend together, she broke off the relationship because he would not allow her to use drugs in his apartment. In response, defendant claimed he got angry and threatened to tell S.J.'s supervisor about her drug habit and "kinky" sexual preferences. Defendant alleged that S.J. fabricated the rape incident in order to counter defendant's threat to inform her supervisor.

In light of the diametrically opposed versions of the incident and S.J.'s delay in reporting, the jury was faced with the question of whom to believe. The jury was free to accept the fabrication theory of defendant. However, after hearing testimony from both individuals, observing their demeanor, and being fully informed about S.J.'s delay in reporting the incident and her reason for the delay in reporting, the jury believed S.J.'s version. Because we will not weigh conflicting evidence nor substitute our judgment on issues of witness credibility for that of the jury, *Diaz*, 859 P.2d at 22, we conclude that it was reasonable for the jury to believe S.J.'s testimony including her stated reasons for the delay in reporting and we will not disturb the jury's verdict.

■ Insofar as defendant argues that S.J.'s delay in reporting created a situation where there was no physical evidence of the rape thereby requiring reversal of the jury's verdict, his arguments are without merit. In *State v. Archuleta*, 747 P.2d 1019, 1021 (Utah 1987), the Utah Supreme Court addressed the question of whether, absent any physical evidence, a conviction for rape could be sustained based solely on a victim's testimony. The court held that "the principal evidence supporting the conviction in this case consist-

2. In *In re J.F.S.*, 803 P.2d 1254 (Utah App.), *cert. denied*, 815 P.2d 241 (Utah 1991), this court discussed some of the factors that might cause a rape victim to delay reporting an incident to police. The court stated that "[t]he embarrassment and shame that is characteristic of rape victims prevents many victims from reporting the incident." *Id.* at 1259. The court further stated:

A very small minority of victims of non-stranger, less violent rapes perceive themselves to be rape victims, notwithstanding that they all felt forced to have sex against their will through force or threat of force. Among the minority who do perceive themselves as rape victims, only a minority of that group contact police.... Forced sex among non-strangers, particularly in social situations, is rarely perceived as a crime, and by all indicators, rarely reported as such....

*Id.* at 1259 n. 6 (quoting Susan Estrich, *Rape*, 95 Yale L.J. 1087, 1168 (1986)). The court also indicated that it is common for victims of rape to delay reporting an incident because they fear no one will believe them. *Id.* at 1259.

ed of the victim's testimony, there being no decisively corroborating physical evidence. We again decline to adopt the position that the testimony of a rape victim, without more, cannot support a conviction." *Id.; see also In re J.F.S.*, 803 P.2d 1254, 1259 (Utah App. 1990) (physical evidence not necessary to sustain rape conviction).[3] We therefore hold that physical evidence of the rape was not necessary for the jury to conclude, beyond a reasonable doubt, that defendant committed the crime charged.

### Prosecutorial Misconduct

Defendant contends that statements made by the prosecution during closing arguments constitute prosecutorial misconduct and that the trial court erred by denying his motion for a mistrial based on those statements. We disagree.

■ This court will reverse a jury verdict on the basis of prosecutorial misconduct only if it is shown that

> the actions or remarks of [the prosecutor] call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.

*State v. Peters*, 796 P.2d 708, 712 (Utah App.1990) (citing *State v. Gardner*, 789 P.2d 273, 287 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990)). A defendant must therefore show that 1) the prosecutor called to the attention of the jury matters it was not justified in considering, and 2) that the prosecutor's comments were prejudicial such that there was a reasonable

likelihood that, in the absence of the comments, there would have been a more favorable result. *Id.* Additionally, "[i]n determining whether a given statement constitutes prosecutorial misconduct, the statement must be viewed in light of the totality of the evidence presented at trial." *State v. Cummins*, 839 P.2d 848, 852 (Utah App.1992). Moreover, because the trial court is in an advantaged position to determine the impact of a statement on the jury, "its rulings on whether the prosecutor's conduct merits a mistrial will not be overturned absent an abuse of discretion." *Id.* (citing *Gardner*, 789 P.2d at 287).

■ Defendant argues the emphasized portions of the following three statements made by the prosecutor during closing argument constitute prosecutorial misconduct requiring reversal:

(1) Now, reporting to the police is not the same thing as reporting. The police might be the only ones who can do anything about it, but that lady told somebody almost immediately. She was scared to death. She didn't want to go tell the police. She's got this guy on parole, who's done all these things to her, who has a key to her house. She's got four kids. You bet she's scared. *How many wom[e]n have experienced the police intervening in something and then nothing happens except that they have to go back to the way it was?*

(2) This gentlemen, on the other hand, would rather tell a story. I don't know why he feels compelled to do it, *I don't know why he hates that woman so badly,* but he just has to have—

---

**3.** One commentator has noted that rape is a crime in which corroborating evidence is usually unavailable.

> In most [rape] cases, there are no witnesses. The event cannot be repeated for the tape recorder—as bribes or drug sales are. There is no contraband—no drugs, money, no stolen goods. Unless the victim actively resists, her clothes may be untorn and her body unmarked. Medical corroboration may establish the fact of penetration, but that only proves the victim engaged in intercourse—not that it was non-consensual or that this defendant was the

man involved. Moreover, the availability of medical corroboration turns not only on prompt and appropriate treatment by police and medical personnel but, in the first instance, on the victim not doing what interviews find to be the most immediate response of many rape victims: bathing, douching, brushing her teeth, or gargling. On the surface at least, rape appears to be a crime for which corroboration may be uniquely absent.

*J.F.S.*, 803 P.2d at 1259–60 (quoting Estrich, *supra* note 2, at 1175).

(3) Ladies and Gentlemen, *the performance that you saw from the defendant on the witness stand was utterly incredible.*[4]

Defense counsel contemporaneously objected to each of these comments. The court sustained defense counsel's objections to the first two comments and cautioned the prosecutor against making references to matters not in evidence. The court noted defense counsel's objection to the third comment for the record. Defense counsel also had an opportunity to address the prosecutor's comments during his closing argument.

 Even if we assume that the prosecutor's comments called to the jury's attention matters it was not justified in considering, when viewed in light of the totality of the evidence, the comments were not "prejudicial such that there [was] a reasonable likelihood that, in [their] absence, there would have been a more favorable result." *Peters,* 796 P.2d at 712. We therefore conclude that the prosecutor's comments did not constitute prosecutorial misconduct and the trial court did not err by denying defendant's motion for a mistrial.[5]

### Ineffective Assistance of Counsel

Defendant also argues that his trial counsel was ineffective because he failed to adequately investigate the home visits conducted by defendant's parole officer, Gerald White, and because counsel failed to call White to testify at trial. We disagree.

After the appeal was filed in this case, defendant moved to remand the case to the trial court pursuant to Rule 23B of the Utah Rules of Appellate Procedure for an evidentiary hearing on defendant's ineffective assistance of counsel claim. This court granted defendant's motion and remanded this case for an evidentiary hearing.

 Where the trial court has heard and ruled on a claim of ineffective assistance of counsel, this court is "free to make an independent determination of a trial court's conclusions." *State v. Templin,* 805 P.2d 182, 186 (Utah 1990); *accord State v. Crestani,* 771 P.2d 1085, 1089 (Utah App.1989).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The factual findings underlying the trial court's conclusions will not be set aside unless they are clearly erroneous. *Templin,* 805 P.2d at 186. In order to properly challenge the trial court's findings of fact on appeal, the complaining party must "marshal all the evidence in support of the trial court's findings and then demonstrate that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings." *State v. Moore,* 802 P.2d 732, 738 (Utah App.1990) (quoting *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985)).

On remand, the trial court found that White, defendant's parole officer, participated in a parole pre-revocation hearing wherein defendant stated, contrary to his testimony at trial, that he "never touched" S.J. The findings also indicate that while White in-

---

4. Defendant also argues that the following comment by the prosecutor constitutes prosecutorial misconduct: "The fact that Mr. [Prosecutor] doesn't believe [defendant's] story doesn't mean that you can't believe the story if you want to." Defense counsel did not, however, object to this comment at trial and therefore we do not separately treat it. We note, however, that the statement tends to mitigate the force of the third quoted statement.

5. While addressing defendant's motion for a mistrial, the trial court noted that it was not the prosecutor's statements that hurt defendant's case but defendant's own testimony: "One of the things that hurt this case the most [at trial] was [defendant's] own testimony. It became so incredible to believe what [defendant] had to say about what happened on the night of the event that the jury, likely, didn't buy his testimony."

spected defendant's apartment on several occasions prior to this incident, he did not inspect the apartment on November 10, and was not a witness to any of the events that evening. The findings further indicate that defendant's trial counsel was aware of what White's testimony would be and decided not to call him as a witness. Defendant has not properly challenged the trial court's findings of facts which we therefore accept. *See Moore*, 802 P.2d at 738.

 Based on these findings, the trial court concluded:

1. Defendant's counsel was not ineffective in choosing not to call defendant's parole officer to testify regarding an inspection of defendant's residence on a night or nights prior to 10 November 1991, especially where the defense had successfully argued before trial that the jury should not hear evidence of the defendant's prior criminal acts or parole status.

2. There is no possibility that the jury would have reached a different verdict if Mr. White had testified. The defendant himself admitted to prolonged sex and drug activity at his apartment on the night in question, no evidence of which was ever uncovered by any of White's inspections. It would have been illogical for the jury to conclude that White's visits prior to 10 November 1991 would somehow have prevented defendant's actions on that date.

We conclude, under the first prong of the *Strickland* test, that counsel's performance was not deficient. Based on the trial court's findings and conclusions, it may have even been prejudicial to defendant to have called White as a witness. Defendant argued prior to trial that his criminal record and current parole record should not be presented to the jury. Had White testified, defendant's criminal record and parole status would necessarily have been placed in evidence. Additional-

ly, White would have been able to testify that in a pre-revocation hearing, defendant testified that he had "never touched" S.J., while at trial defendant claimed that he had had consensual sexual contact with S.J. White's testimony could have further undermined defendant's credibility. The trial court therefore did not err by ruling that defendant's trial counsel was not ineffective for deciding not to call White as a witness.[6]

### Sentencing Guidelines

Defendant argues that the trial court abused its discretion in sentencing him to the term of middle severity (ten years) instead of the lesser term (five years) under the minimum mandatory sentencing scheme because the court considered improper sentencing factors. We disagree.

 "A sentence will not be overturned on appeal unless the trial court has abused its discretion, failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits." *State v. Nuttall*, 861 P.2d 454, 457 (Utah App.1993); *accord State v. Gibbons*, 779 P.2d 1133, 1135 (Utah 1989). "An abuse of discretion may be manifest if the actions of the judge in sentencing were 'inherently unfair' or if the judge imposed a 'clearly excessive' sentence." *State v. Russell*, 791 P.2d 188, 192–93 (Utah 1990) (quoting *State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978)). "[T]he exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court." *Gerrard*, 584 P.2d at 887 (citing *State v. Harris*, 10 Wash.App. 509, 518 P.2d 237 (1974)). Additionally, "[t]his discretion is not to be surrendered to a mathematical formula by which numbers of circumstances rather than weight of circum-

---

6. Defendant also contends that his defense counsel was ineffective for not objecting to the prosecutor's statement that the Utah Transit Authority buses were not running on Veteran's Day. Defendant claimed at trial that he rode the bus on Veteran's Day to the hospital in order to obtain a work release form. The facts indicate that the buses were operating on Veteran's Day. In the evidentiary hearing on defendant's ineffective as-

sistance of counsel claim, the trial court dismissed defendant's allegation as irrelevant and refused to find defense counsel's performance deficient. We note that even if defense counsel's failure to object to this comment could be considered "deficient performance," there is no likelihood of a different outcome and thus no demonstration of prejudice.

stances are determinative. The overriding consideration is that the sentence be just. One factor in mitigation or aggravation may weigh more than several factors on the opposite scale." *Russell,* 791 P.2d at 192.

In imposing a sentence under Utah Code Ann. § 76–3–201 (1990), the trial court was required "to (1) identify the mitigating and aggravating circumstances and (2) state the reasons for whichever minimum mandatory sentence is imposed." *Gibbons,* 779 P.2d at 1137. The trial court begins with the presumption that defendant will be sentenced to a term of middle severity: "If a statute under which defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime." Section 76–3–201(5)(a).[7] "The trial court must then determine whether it is appropriate, in light of the circumstances of an individual defendant, to vary from the statutory presumption of the term of middle severity." *State v. Elm,* 808 P.2d 1097, 1099 (Utah 1991).

In the present case, the trial court expressly found that there were no mitigating factors. Defendant argues that the trial court erred because it did not consider as a mitigating factor his lack of a prior history of sex-related offenses. This precise argument was made in *Russell* where the defendant had an extensive juvenile history of offenses against persons but did not have a history of sex-related crimes. The supreme court held that in light of defendant's extensive criminal history, the trial court did not abuse its discretion by omitting to find "that defendant had no prior charges or convictions of sexual offenses." *Russell,* 791 P.2d at 192; *accord Gibbons,* 779 P.2d at 1135. In the present case, the trial court noted that defendant had an extensive history of violent and antisocial crimes. In light of defendant's extensive criminal history, the trial court did not abuse its discretion by failing to list as a mitigating factor defendant's lack of a history of sex-related crimes. *See Russell,* 791 P.2d at 192; *Gibbons,* 779 P.2d at 1135.

Defendant further argues that the trial court erred by not finding as a mitigating factor that he was cooperative with law enforcement officials. The trial court specifically found that defendant "was not cooperative" with law enforcement. The record supports this finding. Defendant initially told police that he "did not touch" S.J. However, at trial, defendant maintained that he did touch S.J. and that she was the one that initiated the contact. In light of defendant's conduct, we cannot say that the trial court abused its discretion by finding that defendant was not cooperative with law enforcement.

Defendant further argues that the trial court erred by considering improper aggravating factors. However, because the trial court found no mitigating factors, it was unnecessary for the court to find any aggravating factors in order to sentence defendant to the presumptive term of middle severity. *See* section 76–3–201(5)(a) (in absence of mitigating or aggravating factors sentence of middle severity is presumptive). In light of the fact that the trial court sentenced defendant to the term of middle severity, we need not address defendant's arguments with respect to the aggravating factors.[8]

---

**7.** The statute under which this defendant was found guilty, provides that "[a]ggravated sexual assault is a first degree felony punishable by imprisonment in the state prison for a term which is a minimum mandatory term of 5, 10, or 15 years and which may be for life." Utah Code Ann. § 76–5–405(2) (1990). Subsection 76–3–201(5)(a) (1992) was renumbered without modification in 1993 as subsection 76–3–201(6)(a).

**8.** The trial court found several aggravating factors including: 1) defendant's "extensive prior history" of aggravated violent and antisocial offenses; 2) the fact that the threats and violence in this case occurred in a date-rape situation; 3)

traumatization of S.J. over a substantial period with a lasting impact on S.J.; 4) defendant's lack of cooperation with police and his unwillingness to complete probation previously imposed on him without court intervention; and 5) the physical assault on S.J.'s face. With respect to this last factor, defendant correctly cites *State v. Russell,* 791 P.2d 188 (Utah 1990), for the proposition that " 'although a listed aggravating circumstance is an essential element of the crime of aggravated sexual assault, one convicted of that crime nevertheless cannot be sentenced to a mandatory term greater than that of a middle severity in the absence of *additional* aggravating circumstances.' " *Id.* at 192 (quoting *State v.*

Based on the lack of mitigating factors, we cannot say that "no reasonable [person] would take the view adopted by the trial court." *Gerrard*, 584 P.2d at 887. We therefore conclude that the trial court did not abuse its discretion by sentencing defendant to a term of middle severity.

## CONCLUSION

The evidence was sufficient to support the jury's verdict and S.J.'s delay in reporting was duly and properly considered by the jury in reaching its guilty verdict. The trial court did not err by denying defendant's motion for mistrial based on comments made by the prosecutor during closing argument. The

*Egbert*, 748 P.2d 558, 560 (Utah 1987)). Had the trial court used only this factor to deviate from the presumptive term of middle severity and to sentence defendant to a term of maximum severity, defendant's argument would have merit.

trial court did not err in ruling that defendant's trial counsel was not ineffective in deciding not to call White as a witness. The trial court did not err in its decision to sentence defendant to a term of middle severity.

Defendant's conviction is affirmed.

BILLINGS and ORME, JJ., concur.

However, because the trial court did not sentence defendant to a term of maximum severity, it did not need to consider any aggravating factors, and any error in considering S.J.'s bodily injuries was harmless.